No. 13,593.

SMITH BROS. & COMPANY, LIMITED, VS. NEW ORLEANS AND NORTHEAST-
ERN RAILROAD COMPANY, ET ALS.

## SYLLABUS.

This is an action for damages for the breach of an obligation of the carriers to carry goods *in bond.* Plaintiff's instructions were not misleading, but in all respects were clear enough. The reasons of plaintiff for desiring the goods to come from Charleston *in bond* were evident enough to warn defendants not to take them out of bond. Proper papers were delivered by plaintiff for obtaining the goods to be carried *in bond.*

The goods were taken out of *bond* without authority and were, in consequence, of less value at the point of destination than they would have had, had they been brought there *in bond* as intended by plaintiff.

The defendants are liable for damages, which might have been foreseen. They knew that plaintiff is a merchant, who would seek to sell his goods in the most favorable market. It was not proper for them to assume (although they were in good faith) that it was as well to pay the duties in Charleston and there take the goods out of bond, thereby rendering it no longer possible to export them from New Orleans. Taking the goods out of *bond* was an act of interference with plaintiff's right, rendering the defendants responsible for actual damages.

Between the two defendants, the one the initial line and the other the continuing line to the point of destination, the responsibility is solidary, both having taken part in the taking of the goods out of bond and the carrying of them to the point of destination.

A PPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Denegre, Blair & Denegre,* for Plaintiff, Appellee.

*Harry H. Hall,* for N. O. & N. E. R. R. Co., Defendant, Appellee.

*Henry J. Leovy* and *Rice & Montgomery,* for the Charleston and Savannah Railway Company, the Savannah, Florida and Western Railway Company, and the Alabama Midland Railroad Company, known as the Plant System, Defendants, Appellants.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff claims damages in the sum of two thousand one hundred and eighty-two 66-100 dollars, growing out of defendants'

failure to carry a consignment of rice *in bond*. Plaintiff avers, substantially, that 218,260 pounds of rice were shipped to it from Hamburg on the steamship Dalmetia, due to arrive in Charleston, South Carolina, in May, 1898; that through their agents, the defendant railroads applied to plaintiff for the transportation of the consignment over their line of railroads from the port above named to New Orleans; that plaintiff made known to these agents that it wanted the rice carried *in bond*, as sanctioned by a statute of the United States (without custom duty), and that for that reason they were not willing to pay the custom duty of two per cent. per pound at the port of Charleston; that after having been informed of plaintiff's desire, the defendants' agents advised it of their willingness and ability to transport this rice on the conditions before stated; that on receiving this information, plaintiff delivered its bill of lading to the agents of the Northeastern Railroad Company, who promised to make all needful arrangements with the steamship before named and with the customhouse authorities at Charleston and with other connecting railroads for the transportation of the rice through to New Orleans *in bond,* without payment of custom duties; that the said railroad company bound itself to deliver this rice in bond to plaintiff in New Orleans for twenty-five cents per hundred pounds for all charges.

The invoice, dated May 10th, 1898, issued in Hamburg for the 1000 bags of rice in question which, in due time, was placed in the hands of the "Plant Railroad system," after the arrival of the steamship Dalmetia at Charleston, among other statements, contained the following, "to be shipped per Str. Dalmetia to Charleston in bond for New Orleans." On May 25th, the agent here wrote to the representative of the "Plant System," inclosing the invoice to which we have just referred. The letter contained the following, among other statements: "As I understand it, the Plant System is a bonded line, and there will be no difficulty in handling the business to New Orleans. All customhouse duties to be paid here by Smith Bros. & Co., Limited."

A member of the plaintiff firm testified that when he delivered the bill of lading to the agent in New Orleans, in the presence of the agent of the "Plant System" who was here at that time, he stated to them that it was necessary for the rice to come *in bond*. He also stated as a witness that he declined to turn over his rice to a rival system of railroads to be hauled for the same rate, as he was led to believe that the "Plant System" was a bonded road.

As relates to the "Plant System," its co-defendant, the New Orleans and Northeastern Railroad Company, charges that the former agent of the "Plant System" falsely represented that their system was a bonded line and also represented that they could bring the rice from Charleston to New Orleans without the payment of duty and that they paid the duty, although well aware that they ought not to have paid it. This defendant avers that the judgment of the lower court released the New Orleans and Northeastern Railroad Company from all liability and held its co-defendant, the "Plant'System," for the damages, because it had not committed the breach of contract of which plaintiff complained; that it was pretended by the officers of the "Plant System" that their officials had been misled by a letter of instructions sent by the agent of the New Orleans and Northeastern Railroad Company, a position not sustained in the District Court; that the officers of the "Plant System" always understood that the rice in question was to be shipped *in bond;* that they were informed by the customs officials in Charleston that their line was not a bonded road and, instead of notifying plaintiff, they purposely withheld the information until June 2nd, and after they paid the duties, and that this was done only in order to cover the freight upon the haul.

It appears that about June the rice arrived in New Orleans, but not *in bond,* in violation of the agreement to which we have just referred. The New Orleans and Northeastern Railroad Company refused to deliver the rice to plaintiff without payment to it of the custom charges, amounting to four thousand three hundred and sixty-two 12-100 dollars, and the freight charges of twenty-five cents per hundred pounds. To prevent loss and to avoid a forced sale, plaintiff paid these amounts under protest and reserved all of his rights to sue for and recover the amount thus paid to this railroad.

Plaintiff in its petition sets out at some length the loss it incurred in consequence of defendants' disregard and violation of the agreement as stated, growing out of the fact, it avers in substance, that the rice could have been more profitably handled and sold here *in bond* than with the custom duties paid, for the reason that if it had been in bond it could have been exported to foreign markets or it could have been sold to the United States government, which, at the time, was buying large quantities of such food for its armies, and further that plaintiff could not profitably handle so large a quantity of rice not in bond, owing to the limited sales of rice in the local market at the time; plaintiff charges that all these facts were well known to the defendants when they promised to transport the rice *in bond.*

Plaintiff avers that it had to sell this rice in the local market for less than it cost, and that if the defendant had complied with their contract as a common carrier, instead of losing, it would have made a profit. It claimed from the defendants *in solido* the amount of loss it alleges it has sustained and the profits it would have made. The final balance of the exhibit annexed to the petition reads: "Actual loss per pound, $.0156."

The defendants filed separate answers. The New Orleans and Northeastern Railroad Company admits that a consignment of rice was made to the plaintiff as alleged, and especially avers that it was agreed by its agent with the agent of the "Plant System" that the rice was to come from Charleston to New Orleans over the "Plant System" and this defendant's road *in bond,* and that it was understood that the customs duty of two cents per pound should not be paid in the port of Charleston.

This defendant avers that it was in no wise responsible for the failure of the "Plant System" of railroads to carry out the instructions received or to fulfill the undertaking it had assumed, and that if any payment of the duty in question made by the "Plant System" has violated any contract with plaintiff, this defendant is not responsible for its violation.

The other defendant, the "Plant System," alleges, in substance, in its answer, that if any damage has been suffered, plaintiff alone was at fault in communicating its instructions and purposes to the agent of the New Orleans and Northeastern Railroad Company, or in the misleading instructions given to the representative of the "Plant System" by the agent of the New Orleans and Northeastern Railroad Company.

The judgment of the District Court is in favor of plaintiff and against the defendant, the "Plant System," for the sum of two thousand one hundred and eighty-two dollars and sixty-six cents, with legal interest from June 22nd, 1898, and sustains the writ of attachment sued out by plaintiff. As relates to the New Orleans and Northeastern Railroad Company, the District Court rejected the demand of plaintiff.

There is no question but that the plaintiff desired to have the rice carried from Charleston to New Orleans *in bond* and that ample notice of plaintiff's wish in this respect was given to the agent of the New Orleans and Northeastern Railroad Company in New Orleans. We think that it is equally as evident that the "Plant System" was aware

of the instructions given by plaintiff for hauling the rice *in bond*. While it is true the testimony is conflicting, one of the members of the plaintiff firm who testified and the agent of the New Orleans and Northeastern Railroad Company agree in the statement that such was the instructions received and afterwards communicated to the officials of the "Plant System." The agent of the "Plant System" admitted, as a witness, that his understanding and that of the agent of the New Orleans and Northeastern Railroad Company was that the "Plant System" was a bonded line, but this was error, as the "Plant System" was not a bonded line for south-bound freight from Charleston.

We will not dwell upon this particular issue at any length. Before passing to the consideration or another ground of the decision, we will state, without the least hesitation, with reference to one of the defendants, the "Plant System," that it must be held to have been fully informed of plaintiff's intention regarding this consignment.

Indeed both the defendants knew that the goods were to come to New Orleans *in bond*. But, while virtually conceding this, the defendants urged that they did not know and that plaintiff did not make the least attempt to inform them of the fact that it, plaintiff, wished to sell the goods to the United States government or to ship them, duty unpaid, to another country. This defense is particularly urged by the "Plant System." The contention on its part is that the New Orleans and Northeastern Railroad Company did not specifically explain to or instruct its co-defendant (the "Plant System") as to the intention of plaintiff regarding the sale to the United States or a reshipment of the goods, as just stated, and that it, the "Plant System," had the right to infer that the only possible damage that plaintiff could suffer would arise from the payment at Charleston instead of at New Orleans, and that as no damage could have arisen in that case, none was due. This is the important question involved.

The proof is that the grade of rice in question could not compete in New Orleans with the domestic rice, and that it was quite evident that the rice was only suitable for exportation from the port of this city. In answer to the proposition that the low quality or grade of the rice was warning enough not to take it out of *bond;* that it must have been evident from that fact that it was intended for exportation, defendants deny that this was a warning or notice at all. We can only say, in deciding the question, that whether that fact was in itself a

warning or not, defendants should not have taken the goods out of *bond.*

Viewed in the most favorable light, defendants' action was hasty and ill-advised. They must or should have known that the owner had an object in importing this rice *in bond.* A member of the plaintiff firm testified positively that one of the agents of the "Plant System" had been informed of the object. There are circumstances sustaining the correctness of that statement.

The right to ship *in bond* was absolute and defendants should have been extremely slow in interfering with the right without special instructions.

In the presence of the testimony and in view of the surrounding facts and the rights of the parties, we do not think it possible, in justice and reason, to arrive at the conclusion that defendants were justified. The rice was intended by the owner for exportation or for sale to the United States and it was not for defendants to assume that it was intended to be sold in New Orleans.

It is evident that on receipt of the rice *in bond,* the plaintiff would have exported it if it had been to its advantage. It appearing that it would have been profitable at the time to export this rice, it is not for defendants to set up the defense that if it had been sold to the United States government, the receipt *in bond* would not have been of any benefit. The test, as relates to the measure of damages, is the disposition which plaintiff might have made of it by exportation, if exportation was to its benefit.

On this point the defendants insist, substantially, that no consequence which is not the necessary and ordinary result of a breach of the obligation can be supposed to have been contemplated unless full information be imparted to the party sought to be held liable at the time of entering into the engagement; in other words, that the "special circumstances" rendering it important to plaintiff that the goods should arrive in New Orleans *in bond* were not communicated to the defendants who, therefore, cannot be held to have contemplated or to have foreseen the damages which might result from the duties being paid in Charleston, citing Articles 1934-1943 of the Civil Code and a number of decisions.

True, in this case, the defendants were not guilty of fraud or bad faith and, in consequence, the question falls in some degree within the meaning of the articles just cited. But we are inclined to the opinion

that these articles are not as restricted in their scope as defendants would have us take them. The words of one of the articles are, "such damages as were foreseen or might have been foreseen." We think that the special condition attached to enable one to recover damages was directly brought home to defendants by the recital contained in the invoice in their possession. The damages resulting from the breach might have been foreseen. The loss in the value of the goods was a direct consequence of the breach of the obligation. Besides information had been imparted to at least one of the defendants, if not both, ample enough to warn either or both not to pay the duty. This, as we think, brings the case within the rule furnished by the cases cited by the defendants, the leading case being Hadley vs. Baxendale, 9 Exch. 314. The decisions rendered under the common and civil law systems, in our opinion, do not hold that one is not responsible unless every damage possible is brought home to him in express terms at the time the obligation was assumed. It is true that the loss is limited to the thing which was the object of the obligation.

Pothier (Dupin's Edition, Vol. 1) illustrates the principle thus: Let us suppose that I have sold a thing having a well known value in the market and which I bind myself to deliver within a certain time and that I failed to comply with my obligation. If in that time the article had increased in value and it could no longer be purchased at the same price, the increase in price which the buyer from me is obliged to pay is a damage which I owe, because it is damage suffered *propter rem ipsam non habitam,* which is in touch with the thing which is the object of the contract and which I might have foreseen. This authority then gives examples of damages which could not have been foreseen. The latter do not cover defendants' case. Pothier's view has the support of the civil law authorities.

To conclude upon this subject, the carrier who takes goods of a merchant out of *bond,* without instructions, and despite the circumstances indicating that they had a value *in bond,* is not in the situation of one who could not have foreseen the possibility of accruing damages.

The responsibility of the defendants between themselves gives rise to the next question. The New Orleans and Northeastern Railroad Company insists that the breach of the obligation was committed by the "Plant System" and the "Plant System," on the other hand, contend that they only carried out instructions communicated by the agent of the first named road. A letter was introduced in evidence, written by

the agent of the New Orleans and Northeastern Railroad Company, instructing the "Plant System" to pay the customs duties. This was understood, the "Plant System" contend, as including all customs duties paid. There were two or more different statements in this letter, one leading to the inference that it was the carrier's wish (that is, the New Orleans and Northeastern Railroad Company) that the duties be paid in Charleston and the other, that, in compliance with its desire, they must not be paid. There was direct contradiction in the letter. The writer's testimony was admitted to explain the meaning of the letter. To this explanation, counsel for the "Plant System" objected and reserved a bill of exceptions to its admissibility. For the reasons just stated, the letter was confusing and ambiguous. The explanation was properly heard. This witness said that by the words in the letter, "If any customs duties accrued at Charleston, please have same paid and billed against the shipment," he meant if any charges accrued while the shipment was in *bond,* same were to be paid and billed against the shipment. The other testimony of this witness in this connection does not relieve his company (the New Orleans and Northeastern Railroad) from all responsibility. It remains that these defendant companies acted together. One was the continuing line of the other in carrying this freight. They both obligated themselves as carriers and each, we think, took a part in securing this freight and to that end in taking it out of *bond.* The information gained by one of the officials at one end of the line was communicated to the other at the other end. The errors of each in the iterest of both and with the sanction of both do not present issues enabling us to conclude that the damages were all due by one of these railroads.

As relates to the amount, we do not think that the testimony would justify us in reducing it lower than found due by the judgment of the District Court.

For these reasons, the judgment of the District Court is avoided, annulled, and reversed, and it is now ordered, adjudged, and decreed that there be a judgment in favor of plaintiff against defendants *in solido* for the sum of twenty-one hundred and eighty-two dollars and sixty-six cents, with interest at five per cent. from June 22nd, 1898, until paid. It is further ordered that the writ of attachment herein issued be maintained with plaintiff's lien and privilege on the property attached.

Costs of appeal are to be taxed to defendants and appellants.

Monroe, J., concurs in the decree.

Rehearing refused.