Statement of the Case.
NICHOLLS, C. J.
This proceeding, commenced by a rule taken upon the New Orleans & Northeastern Railroad Company, one of the defendants in the above-entitled suit, by the other defendants therein, to wit, the Charleston & Savannah Railway Company, the Savannah, Florida & Western Railway Company, and the Alabama Midland Railroad Company, doing business under the name and style of, and known as, the “Plant System,” to show- cause, if any it had, why the legal subrogation which the latter claimed to have to all the rights and remedies which Smith Bros. & Co., Limited (plaintiff in the suit) had against the Northeastern Railroad Company, should not be recognized and declared by the court to the extent of one-half of the said judgment, interest, and costs, which had been paid by movers, with legal interest thereon from the 8th day of July, 1901, until paid, and why execution should not issue in accordance with law to satisfy the same.
In the application for the rule, movers suggested to the court that final decree was rendered in the above suit in the sum of $2,182.00, with 5 per cent, interest per annum thereon from the 22d day of June, 1898, until paid, together with all costs of court against movers, the Plant System, and against its eodefendant, the New Orleans & Northeastern Railroad Company in solido; that under said judgment a writ of fieri facias issued, on the 2Sth day of June, 1901, directed to and requiring the civil sheriff of the parish of Orleans .to seize the property and personal rights and credits of the defendants, in order to the satisfaction of said judgment, as appeared from the said writ, referred to as part of the rule; that, said sheriff having threatened to seize, and being about to seize, the property, real and personal, rights, and credits of movers in order to' satisfy said writ, and thereby bring about great cost, inconvenience, and trouble to movers (known as the “Plant System,” composed and doing business as aforesaid), they, to avoid said costs, inconvenience, and trouble, after due demand, paid to said sheriff the full sum of $2,622.75, the full amount of said judgment, interest, and costs, and thereby satisfied said writ, as shown by said sheriff’s return thereon; that by said payment movers became legally subrogated to all the rights and remedies of Smith Bros. & Co., Limited, plaintiff, against the New Orleans & Northeastern Railroad Company, movers’ codefondant and co-obligor, in solido, to the extent of one-lialf the said final judgment, interest, and costs; that movers, having made ineffectual demand upon their said codefendant, were entitled to have their said legal subrogation as against said codefendant recognized by the court, and to execution against said codefendant in solido, for the satisfaction of one-half the said judgment, interest, and costs so by movers paid, with legal interest thereon from the 28th day of June, 1901, until paid, and costs of this proceeding, with such other and general relief as might be fit and proper.
The New Orleans & Northeastern Railroad Company, defendant in the rule herein, answered, denying all and singular the allegations of plaintiff’s rule, except in so far as might be admitted. It admitted that plaintiff in the above-entitled cause brought a suit against the said Plant System and respondent in this proceeding, and that a judgment was rendered by the presiding judge of division B, civil district court for the parish of Orleans, in favor of said plaintiff and against said Plant System, but in favor of respondent, the New Orleans & Northeastern Railroad Company, holding that, as to it, plaintiff was not entitled to recover by reason of the fact that the breach of contract complained of was committed solely by said Plant System and in no manner by respondent; that in the Supreme Court the judgment was reversed in so far as respondent was concernedj' not because the Supreme Court found that respondent had participated in this breach of contract, but solely because it was a party to the contract of carriage from *785 Charleston to New Orleans, and as such party to said contract was bound in solido for the violation of said contract by its co-obligors; that it had been clearly and completely established, and was a fact, that the breach of contract complained of, and for which judgment had been rendered in favor of plaintiff, was committed solely by said Plant System, without the participation of respondent, which had nothing to do therewith; that this obligation, although in solido as to plaintiff in the above suit, in fact concerned only respondent’s co-obligors, the Plant System, which was liable for the entire debt, and was without recourse against respondent; and that consequently the payment averred to have been made by it did not result in any legal subrogation as averred.
Respondent prayed that movers’ demand be rejected, that it be condemned to pay the costs of said proceeding, and for all and general relief.
The district court, after receiving evidence and hearing argument, made the rule absolute as prayed for, declaring that, “considering the opinion and the decree of the Supreme Court it [the district court] was of the opinion that, as between themselves, the defenaants in the action of Smith Bros. & Co., Limited, v. New Orleans & Northeastern Railroad Company et al. were co-obligors in solido, and each equally responsible for the violation of the contract, and that the violation was not due solely to the Plant System.”
The New Orleans & Northeastern Railroad company has appealed. The present case was tried in the lower court on the pleadings, evidence, and judgment in the matter of the suit of Smith Bros. & Co., Limited, v. New Orleans & Northeastern Railroad Company et al., No. 58,587, and upon proof of payment of the judgment by the Plant System.
Some time in the spring of 1898 Smith Bros. & Co., of New Orleans, had consigned to it at Charleston, S. C., 1,000 bags of rice, which had been shipped on the steamship Dalmatia from Hamburg, and was due to arrive at Charleston during the latter part of May. Before the arrival of the rice, the New Orleans & Northeastern Railroad Company, through its commercial agent, Leach, solicited the transportation of the rice over their line of connecting railroads from Charleston to New Orleans. It was fully explained to these freight agents that Smith Bros. & Co. desired the rice to be carried through “in bond,” as authorized by the act of congress, and hence that the custom house duties of 2 per cent, per pound should not be paid at the port of Charleston. The agent of the Plant System of roads was under the belief that it was what is known as a “bonded road,” and so informed Leach; and the two agents, therefore, acting under that belief, agreed to transport the rice under such conditions.
After this Smith Bros. & Co. delivered the bill of lading, invoices, etc., of the shipment, to Leach, who sent them forward so that all necessary arrangements might be made with the agent of the steamship Dalmatia, and with the custom house authorities of Charleston, and with those of the connecting roads, for the transportation of the rice in bond, without payment at Charleston of the customs duties.
The advantage to Smith Bros. & Co. in shipping the rice in bond was that it could be more profitably handled and sold in New Orleans in bond, than with the customs duties paid, for the reason that in bond it could be exported to foreign markets, and could be more readily sold to the United States government, which at that time was buying large quantities of rice for its army.
It turned out that the Plant System was not a “bonded road,” as was supposed. In consequence of this fact it could only take possession of the rice at Charleston, paying there the customs duties. This it did, in violation of the agreement made to keep it in bond to New Orleans.
On or about the 17th of June, the rice arrived at New Orleans over the railroad of the New Orleans & Northeastern Company, but not in bond; the duty having, as stated, been paid by the agent of the Plant System at Charleston.
The New Orleans & Northeastern Railroad Company refused to deliver the rice without payment to it of the customs duties, in addition to the freight charges. Smith Bros. & Co., under protest and reservation of their rights, paid them.
On receiving the rice, after making every effort to do better, they disposed of it, selling it at an average of four and one-half cents *787 per pound, which was less than the cost of the rice and the expense of handling it, not including interest on the duties so paid. Had the rice been received in bond, it could have been sold at a profit of one-fourth of a cent per pound.
They therefore brought suit against the different railroad companies, the Plant System and the Northeastern Railroad Company, praying judgment against them in solido for damages.
The defendants severed in their defense. The companies of the Plant System, after pleading the general issue, admitted that they formed a connecting line of railroads, commonly called the “Plant System,” extending from Charleston to a junction with the New Orleans & Northeastern Railroad Company, the line of which runs to New Orleans. They averred that in May, 1898, while the shipment was yet at sea, plaintiff delivered the bill of lading to Leach, the commercial agent of the Northeastern Railroad Company, and authorized him by the delivery of same, and otherwise held him out to them and the world as so authorized and instructed, to control and direct for them all matters connected with the bonding and transportation of said goods or the payment of duties thereon; that Leach, so acting, and representing himself to have such authority, sent the bill of lading to them, with the request that they assist in the transportation of the goods to New Orleans, and that said transportation should be in bond, or custom house duties paid by them, to be repaid to them by the plaintiff;' that the letter of instruction from Leach, far from notifying them that the goods were to be sold without payment of duties, or that the plaintiff did not intend to pay the same, distinctly stated that, “if bonded, all custom house dues were to be paid at New Orleans by the plaintiff,” thus leading them to believe that the only effect of bonding was to be postponement of payment of duties during transportation; that at no time were they otherwise instructed; that accordingly, on its arrival, they paid the duties on the shipment, as stated in plaintiff’s petition, and forwarded the goods with the duties billed against them, which duties were repaid by the plaintiff.
The Northeastern Railroad Company, after pleading the general denial and referring to the shipment of rice to the plaintiff, averred that it was understood by it, and particularly agreed to by M. J. Dempsey, representing the Plant System of railroads, that the rice-in question was to come from Charleston to-New Orleans over said Plant System and its own road in bond, and that the customs rate of 2 per cent, per pound should not be paid in Charleston; that its agent gave Dempsey specific instructions, of which he was well aware, and which he did not misunderstand, to that effect, and that it was in no wise responsible for the Plant System failing to carry out the instructions received, or to fulfill the undertaking assumed by it, and that any payment of customs duty made by the Plant System was without its knowledge or assent; that if the Plant System of railroads, or any one of them, had violated any contract entered into with plaintiff, either directly or indirectly, it (the Northeastern Railroad Comx>any) was not liable for such violation; and that it had discharged all the obligations imposed upon it by the said contract of carriage, or by reason of the transportation of said rice. The prayer of the different defendants was purely defensive.
On the trial of the case each parts’- introduced its own witnesses and cross-questioned that of the others. It was established beyond question that the agents of the Plant System had at Charleston violated plaintiff’s instructions that the rice should continue to be transported in bond to New Orleans, and that in consequence of this violation plaintiff had suffered damages.
The district court rendered judgment in-favor of the plaintiff against the railroad companies composing the Plant System in solido, but rendered judgment against the plaintiff in favor of the Northeastern Railroad Company.
Smith Bros. & Co. appealed, as did also the companies of the Plant System. The Supreme Court annulled and reversed the judgment of the district co-urt, and rendered judgment in favor of the plaintiff against the defendants (among them the Northeastern Railroad Company) in solido. The case-will be found reported in 106 La. 11, 30 South. 265, 54 L. R. A. 923, 87 Am. St. Rep 285.
The companies composing the Plant System subsequently paid this judgment in full, *789 and they, as has been stated, in the present proceeding demand, through subrogation, contribution and reimbursement to themselves of one-half of the judgment from the Northeastern Railroad Company. The district court rendered judgment in favor of plaintiffs, holding itself concluded by the judgment of this court on the first appeal.
Opinion.
Appellees insist that the judgment which this court has heretofore rendered is final and conclusive between these parties, and that the only matter before the district court was as to whether plaintiff's in rule had paid that judgment in full or not.
That payment having been proved, legal subrogation resulted as a matter of law in their favor to the extent of one-half of the judgment.
They refer the court to article 2161, Civ. Code, to Van Fleet’s Former Adjudications, pp. 572-576, to Devin v. Ottumwa, 53 Iowa, 461, 5 N. W. 552, and to 106 La. 18, 30 South. 265, 54 L. R. A. 923, 87 Am. St. Rep. 285.
Appellants maintain that while two railroad companies, contracting for the carriage of freight, will be bound in solido to the shipper for a breach of that contract by one of the companies, as .between the two companies, the one innocent of the breach is considered as surety, and cannot be held by the one in fault for one-half of the judgment paid by the latter.
They cite Civ. Code, arts. 2106-2161; Code of Napoleon, 1216; Potliier on Obligations, Nos. 264-282; Vol. 12, Duranton, p. 167; Baudry, Lacantinerie, p. 354.
The first contention between the parties which is presented to us is the force, effect, and scope of the former decision of this court in this matter.
Appellees, in support of their claim that it not only disposed of the rights of the plaintiff against all of the defendants in the case and the obligations of all of the defendants to the plaintiff, but also liquidated and settled finally the rights and obligations of the defendants as between themselves, quote the following extract from the opinion:
“The responsibility of the defendants as between themselves gives rise to the next question. The New Orleans & Northeastern Railroad Company insists that the breach of obligation was committed by the Plant System, and the Plant System, on the other hand, contend that they only carried out instructions communicated by the agent of the first-named road.
“A letter was introduced in evidence, written by the agent of the New Orleans & Northeastern Railroad Company, instructing the Plant System to pay the customs duties. This was understood, the Plant System contends, as including all customs duties paid.
“There were two or more different statements in this letter — one to the inference that it was the carrier’s wish (that is, the New Orleans & Northeastern Railroad Company) that the duties be paid in Charleston; and the other, that in compliance with its desire théy must not be paid. There was direct contradiction in the letter. The writer’s testimony was admitted to explain the meaning of letter. To this explanation counsel for Plant System objected, and reserved a bill of exceptions to its admissibility. For the reasons just stated the letter was confusing and ambiguous. The explanation was properly heard. The witness said that by the words of the letter, ‘If any customs duties accrued at Charleston, please have same paid and billed against the shipment,’ he meant that, if any charges accrued while the shipment was in bond, same were to be paid and billed against the shipment. The other testimony of this witness does not relieve his company (the New Orleans & Northeastern Railroad Company) from all responsibility. It remains that these defendants acted together. One was the continuing line of the other in carrying this freight. They both obligated themselves as carriers, and each, we think, took a part in securing this freight, and to that end in taking it out of bond. The information gained by one of the officials at une end was communicated to the other at the other end. The errors of each, in the interest of both, and with the sanction of both, do not present issues enabling us to conclude that the damages were all due by one of the railroads.”
It is urged that this court has found and declared that Leach’s letter “was confusing and ambiguous”; that there was “direct contradiction in it”; that the other testimony did not relieve his road from all responsibility; that each “took a part in securing this *791 freight, and to that end in taking it out of bond”; that “the errors of each, in the interest of both, and with the sanction of both, did not present issues enabling the court to conclude that the damages were all due by one of these railroads.”
A reference to the answers filed by the defendants show that none of the roads prayed for judgment against the others. The effort of the companies of the Plant System was directed to showing that, if fault there was, it was that of the New Orleans & Northeastern Railroad Company, while the effort of the latter was to show that the fault was that of the other eomx>anies, and not its own.
Appellant quotes the following extracts from Van Fleet’s Former Adjudications:
“Unless the defendants contest an issue with each other, either upon the pleadings between them and the plaintiffs, or upon cross-pleadings between themselves, it will not be res judicata between themselves. Of course, a judgment determining the rights of the defendants between themselves under proper pleadings is conclusive on them. But a judgment against them, if there are no issues between them, does not bind them as against each other.” Page 572.
“The mere circumstance of any person having been formerly arrayed on the same side in a suit is immaterial, however, and it is agreed now that they will be estopped by a decision on a matter which was actually in issue between them and as to which they had an active controversy against each other.”
Appellant places a construction upon these quotations different from that of the appellees, and insists they are favorable to its view of the situation. We are of the opinion that the decision of this court did not settle the question of the liability of the defendants, as between themselves, arising out of the facts connected with the contract for the carriage of the rice in bond. The companies of the Plant System, in charging the Northeastern Railroad Company with having been the cause of the violation of the rights of the plaintiff, were seeking to have themselves discharged from all responsibility, and not to have any liability judicially decreed in their favor, or in favor of the plaintiff. The only party demanding a judgment against the Northeastern Railroad Company was the plaintiff in the suit. Plaintiff (Smith Bros. & Co.) had appealed from the judgment of the district court relieving that company on the ground that it was not in fault. It was in discussing the legal relations in respect to the plaintiff, and especially from the standpoint claimed, that the particular companies not at fault were absolved from all responsibility, that the language of the court quoted in appellees’ brief was used. This court was of the opinion that for the particular breach charged, and under the circumstances of the particular contract, each company was responsible in solido, so far as the plaintiff was concerned, for the error committed by any one of the others. It is not necessary for us to discuss the proposition whether certain matters were not adjudicated upon by the judgment as to all the parties to the suit, and, if so, what those matters were.
Assuming the plaintiffs were entitled to claim contribution to some extent from the defendant company; is it true they would be entitled to recover one-half of the judgment? The companies composing the Plant System and the Northeastern Railroad Company were each sued as separate, distinct corporations, and, as such,- responsible in solido to the plaintiff; and they were so adjudged to be by the judgment of this court. There were, therefore, four separate colorations, defendants in the suit, all of whom were decreed to be bound in solido to the plaintiff. Three of these corporations are referred to as constituting the Plant System; but the precise relations which those corporations bear to each other is not shown, nor is the nature and character of the Plant System.
These four corporations were interested in the carriage of the rice over roads differing in length, and therefore presumably entitled to different amounts in the freight. The junction of the other roads with the Northeastern Railroad is shown to have been made at Meridian, which, it is said, is 200 miles from New Orleans. The distance from Charleston to New Orleans is certainly over 400 miles, and the Northeastern road could not be made responsible for one-half of the judgment.
We have, however, to determine whether that road can be made to pay any portion *793 of the judgment. Leach acted in this matter as the agent of the Northeastern Railroad. Dempsey, Menzies, and Mclvor were each the common agents of the three other roads composing the Plant System. The rice was taken out of bond by Mclvor under the order of Menzies. Mclvor was the local agent of the Plant System of roads at Charleston, and Menzies the general manager of the System at Savannah, and Dempsey a solicitor for it at New Orleans and Mobile.
The agents of the Plant System at Charleston and Savannah charge that their action in taking the rice out of bond at Charleston was due to instructions received from Leach, contained in a letter from him to Dempsey, which letter the latter transmitted to them, with the bill of lading, invoices, etc.
Leach’s letter to Dempsey bore date the 25th of May, and was as follows:
“I enclose B L and consular invoice covering 1,000 bags of rice from Louis Ritz & Co. of Hamburg, shipped via steamer Dalmatia to Charleston in bond to New Orleans. This boat sailed on May 9th, and will reach Charleston in a few days. I would state that you submit the enclosed papers at once to your people at Charleston, have shipment looked after and routed via Plant System, Montgomery Western Railway of Alabama, and Sou. Ry., care New Orleans & N. E. R. R. Co., at Meridian. Freight on this shipment is prepaid to Galveston. It is desired by Smith Bros. & Co. that we take care of all terminal charges at Charleston protecting 25 cent rate to New Orleans from ship’s side. If any custom house duties accrue at all at Charleston, please have same paid and billed against shipment. Smith Bros. & Co. are leaving the matter entirely in our hands, and ask that we give the best possible attention. As I understand it, the Plant System is a bonded line, and there will be no difficulty in handling the business to New Orleans in bond. All custom house duties to be paid here by Smith Bros. & Co. * * * Please give this matter your prompt attention.”
On the same day (May 25th) Dempsey Wrote to Menzies, the general freight agent of the Plant System, as follows:
“Enclosed please find ocean bill of lading and invoice covering shipment 1,000 bags of rice to Smith Bros. & Co., New Orleans. You will note this shipment is in bond to Charleston, and, presuming that our line is a bonded line, we have secured the shipment from Charleston to New Orleans at total rate of 25 cents per hundred pounds. This steamer should be due in Charleston on receipt of this letter. I wired you to-day notifying you in full and asking you to take up with Mr. Wright, so he may watch the steamer and have it landed at our wharf. Please note letter from Mr. Leach, commercial agent N. O. & N. E., next attached, which explains the case in full. I leave the matter entirely in your hands to carry out the request of Mr. Leach and consignees. Please wire me on arrival of steamer; also forwarding of goods.”
On the 28th of May, Menzies, from Savannah, wrote to Wright, at Charleston, transmitting the bill of lading, invoices, etc., and saying: “These papers are furnished us by Mr. Leach C. A. Q. & C. route, who in his letter of the 25th inst. attached, addressed to Mr. Dempsey, instructs that the freight be secured and forwarded to Smith Bros. & Co., New Orleans, via Montgomery & Southern, care N. O. & N. E. at Meridian. Note instructions contained in Mr. Leach’s letter, and arrange to have same complied with. Advise me of the arrival of steamer and give forwarding.”
On the 30th of May, Mclvor, the local freight agent of the Plant System at Charleston, wrote to Menzies, the general freight agent at Savannah, acknowledging to have received “his letter of the 28th to Wright and its enclosures and letter of instructions from N. O. & N. E. R. R. Co.” He then said: “I saw custom house authorities to-day, and they say that Plant System has no bond on file with them; therefore cannot forward this shipment in bond to New Orleans, so that the entry may be made through New Orleans, instead of at Charleston. I understand it would take some time to arrange a bond, which would have to be approved by Washington authorities. Of course, I am not positively informed as to whether the Plant System is a bonded line for the forwarding of such shipments as this, but had always understood that it was. However, the authorities here claim not. Under these circumstances the rice will have to be entered here. * * * Will you take this up, and *795 wire, with Mr. N. M. Leach, commercial agent of the N. O. & N. E. R. R. at New Orleans, and advise me promptly.”
On May 31st Mclvor wrote again to Menzies, calling his attention to his letter of the day previous, and saying: “Steamship Dalmatia has arrived from Hamburg. Have you arranged for me to enter this shipment and draw upon Smith Bros. & Co., New Orleans, for $4,800? Answer quick.”
On the same day Menzies telegraphed to Mclvor:
“Think can arrange to handle the rice in bond. Hold off until tomorrow [June 1st].” On June 1st Mclvor telegrax>hed to Menzies:
“We must hear positively to-day about rice from steamship Dalmatia for New Orleans. Vessel discharged. This shipment must be entered at custom house to day. Am I authorized to draw upon Smith Bros. & Co., of New Orleans, for $4,800 custom duties.”
On the same day (June 1st) Mclvor telegraphed twice to Menzies.
In the first telegram he said:
“I must positively know what to do about the rice on the S. S. Dalmatia. Unless we enter it at custom house and arrange for taking it on cars to morrow, the authorities may drag it from dock to the custom house at expense of owner. Can’t you have Smith Bros, wire me quick to draw on them for $4,800 to pay duty.”
In the second telegram he said:
“I must hear within hour about entering rice for New Orleans. If you can’t get Smith Bros. & Co. to wire me to draw for $4,800 duty, let the treasurer wire me authority, and we can attach amount to shipment as exjienses.”
On June 22d, at 11:45 a. m., Menzies telegraphed Mclvor at Charleston: “Enter the rice at Charleston, custom house duties, and arrange to forward the shipment as per instructions in correspondence sent you, making same order notify, and draw as consignee for the custom duties, attaching proper papers.”
On the same day (June 2d) Menzies telegraphed Leach as follows: “Your letter 25th ult. to Dempsey rice steamship Dalmatia from Hamburg ship now in port. We are not bonded line and I cannot avoid shiximent being entered at Charleston custom house. Have instructed agent to enter and forward freight, making draft on consignees for custom duties. Have wired Smith Bros. & Co. to this effect. Advise quick if this will be satisfactory.”
On the same day (June 2d) Leach answered as follows: “Your wire second rice steamship Dalmatia Hamburg must reach here in bond. Smith Bros, instruct all papers must be turned over immediately to L. H. Emmerson, traffic manager South Carolina & Georgia Railroad, Charleston. This is bonded line, and they can handle in bond. Your traveling agent, Mr. Dempsey, contracted for this with the understanding shipment could be handled in bond via Plant System.”
On the same day (June 2d) Leach telegraphed Dempsey: “Smith Bros. & Co. refuse to let rice from Charleston come via j'our line, account not being bonded line. Have requested Menzies to turn papers over to South Carolina & Georgia Railroad.”
On the same day (June 2d) Leach telegraphed to Emmerson that he had instructed assistant general agent Plant System to deliver to him “custom house papers covering 1,000 bags rice, steamship Dalmatia, to move to New Orleans in bond. Route via Georgia Railroad, A. & W. P., Western Ry. of Ala., care of Northeastern at Meridian.”
On June 2d Menzies telegraphed Smith Bros. & Co.: “Referring to consignment rice per steamship Dalmatia from Hamburg, covered by papers you delivered to Leach, ship now at Charleston, and we are not bonded line. Cannot prevent shipment from being entered custom house at that point. Have instructed our agent to enter and forward the rice, making draft on you for custom duties, attaching paxiers.”
Smith Bros. & Co. telegraphed back to Menzies on the same day: “Regarding shipment of rice, deliver paper to Emmerson, traffic manager South Carolina & Georgia Railroad, bonded line. Rice must be shipped in bond. Will hold line for damages if shipped otherwise.”
On the same day (June 2d) Menzies telegraphed Mclvor the substance of Smith Bros. & Co.’s telegram to him, adding: “Withdraw entry and deliver all papers to Bentley as instructed.” Mclvor telegraphed back the same day that the entry was made, duty paid, and draft forwarded for collection; *797 that the custom house was closed for- the day; that he would send to them the next morning, and see if they will allow the withdrawal of the entry. On the next day (June 3d) Mclvor telegraphed Menzies that the authorities refused to allow the withdrawal of the entry of the rice, and Menzies telegraphed the same day to Smith Bros. & Co. to the same effect. On the 3d of June Mclvor wrote to Smith Bros. & Co. that the Dalmatia had arrived, that he had entered the cargo, and paid customs dues, $4,800. He closed his letter by saying: “We could not send this shipment in bond to New Orleans for reason that Plant System is not bonded line for such business. We have handled the shipment at direction of your general freight agent.” On the 3d of June Smith Bros, telegraphed Menzies, acknowledging receipt of his telegram, saying: “We were deceived by your agent here regarding your being able to ship rice in bond.”
It is shown by the evidence that the contract for the carriage of the rice was concluded in New Orleans between Saxon, acting for Smith Bros & Co., Leach, acting for the New Orleans & Northeastern Railroad Company, and Dempsey, as the agent of the Plant System; that the contract was made upon the express condition that it was to be shipped in bond from Charleston to New Orleans. It was declared by Dempsey at the time that the Plant System was a bonded road for shipments from Charleston to New Orleans, and he undertook for the Plant System to receive and transport the rice in bond. He doubtless believed that the Plant System of roads were bonded roads. Dempsey, as one of the contracting parties for his roads, knew as well as Leach did what the terms and conditions of the contract were. The letter from Leach to himself of the 25th of May informed him of nothing of which he himself was not already amply informed. Leach’s letter, sent forward to Menzies without explanation from Dempsey, might possibly confuse the former, but it could not confuse Dempsey. Leach, in holding the bill of lading and the invoices and writing the letter, was acting simply as an instrumentality, not for the making of a contract, but for forwarding the papers to enable the contract to be executed as it had been agreed upon. It may be said here that the New Orleans & Northeastern Railroad Company had no interest whatever in having the rice transported to its own line over the Plant System of roads. Another road (a bonded one from Charleston) had offered to transport in bond for the same terms. It was the duty of Dempsey, if there was anything ambiguous or uncertain in the letter which he himself was transmitting to Menzies, to have given the exact facts as he knew them to be, and not left matters in doubt. He was as much the agent of the Plant Line as either Menzies or Mclvor; in fact, more so for the purposes of the terms of this contract. In the consideration of the question as to who committed the error or fault in this case, his actions and course cannot be ignored, so as to refer the same to the after course of either Menzies or Mclvor. Menzies, however,, was not blameless. He should, on receiving Dempsey’s letter to himself, and which it is claimed was misleading and uncertain, have taken steps at once to ascertain exactly what the situation was by application to the proper parties. Instead of this, he thought proper to rest upon the interpretation he placed upon it, and delayed matters so long that, when attempted to be rectified, it was too late to do so. We think that Dempsey and Menzies were both at fault; the former primarily so. Leach’s letter was written to one who would not be supposed to be misled by it, to one who knew as much of the contract as he did, and as much as he did of Smith Bros. & Co.’s instructions.
For the reasons-herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court herein appealed from be, and the same is hereby, annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that plaintiffs’ demands herein be rejected, and their suit dismissed, with costs in both courts.
BREAUX, J., dissents.