(110 So. 425)

No. 26182.

## SMEDES BROS., Inc., v. MORGAN'S LOUISIANA & T. R. & S. S. CO.

(Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Carriers** ⬦➾94(4)—**Actual notice to carrier of special circumstances requiring prompt transportation of fuel oil for sugar factory, as regards right of consignee to special damages, held unnecessary.**

Actual notice to carrier of special circumstances requiring prompt transportation of fuel oil for sugar factory *held* unnecessary, as regards right of consignee to special damages for carrier's conversion of consignee's fuel oil, where carrier knew that grinding operations were on, that there was shortage of crude oil which was fuel used, and that serious traffic congestion existed.

2. **Carriers** ⬦➾94(4)—**Carrier held liable in special damages to owner of sugar factory for nondelivery of crude oil confiscated by it to operate trains.**

Carrier *held* liable in special damages to owner of sugar factory for nondelivery of crude oil confiscated by it to transport troops and war material for government, knowing that grinding operations of sugar factory were on, that there was shortage of crude oil which was fuel used, and that serious traffic congestion existed.

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; William Campbell, Judge.

Action by Smedes Bros., Inc., against the Morgan's Louisiana & Texas Railroad & Steamship Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Mouton & DeBaillon, of La Fayette, for appellant.

Burke & Smith, of New Iberia, for appellee.

BRUNOT, J. This is a suit for general and special damages resulting from the nondelivery of a carload of crude oil to plaintiff.

162 LA.—10

The defendant accepts, as accurate, the statement of the pleadings as they appear in plaintiff's brief which are substantially as follows:

On the 10th of December, 1917, defendant received the car of crude oil, the bill of lading indicating T. & N. O. No. 17,499, and consigned to Smede's factory, and some time between the 13th and 18th of that month the oil was converted by defendant. It is alleged that at the time of the conversion the responsible agents of the defendant were aware of the fact that the plaintiff company is, and was then, engaged in the operation of its factory, necessitating oil in large quantities, and that the same was essential to the operations of the plant; that it knew that the grinding operations were on; that the nature of cane is such that it requires speedy disposal and conversion into sugar; that the failure to so dispose of it results practically in certain loss, and the failure to have a fuel supply occasioned a suspension of plaintiff's operations, with consequent loss in cane, sugar, and labor expense; and that besides the notice which defendant already had, plaintiff immediately called for delivery of the fuel. The alleged items of damage are: 4,650 gallons of syrup at 25 degrees B., which was soured, resulting in a loss of 13,950 pounds of sugar at the current price of 6.21 cents, the total being $737; 13,800 gallons of syrup, which, because of lack of fuel, became too sour to boil back, resulting in the loss of 20,000 pounds of sugar, at the price stated above, making a total of $1,240; the further loss of 1,170 gallons of syrup at the current price of 21 cents, a total of $245.70; the further loss of $78.15, because of the lack of fuel, which prevented plaintiff from grinding and converting into sugar 78 tons of cane which plaintiff had purchased at the price of $6.85 per ton and was forced to sell at $6 per ton in order to minimize the damage; the further loss of $91.53, the wages of

plaintiff's employees while the mill was idle awaiting delivery of the oil, in the hope of being able to resume operations; and an expense of $3.65, additional telephone and telegraph charges made necessary by the nondelivery of the oil. The prayer of the petition is for a judgment in favor of the plaintiff and against the defendant for $2,554.53, the total of the sums above enumerated.

Defendant excepted to the jurisdiction of the court ratione personæ. The exception was overruled and defendant answered the petition. The answer admits the conversion of plaintiff's car of oil, but it avers that a car of crude oil was delivered to plaintiff at Cade, St. Martin parish, on or before December 18th to replace it, and that this delivery was made within 48 hours after its receipt of notice from plaintiff of the necessity for the immediate delivery thereof; that the conversion made by defendant was necessary to enable it to operate its trains, as a public carrier, particularly in the transportation of troops and war material then being transported for the United States government, which was at war with the Central Powers of Europe. It is also averred that at the time of the conversion defendant had no fuel oil at Lafayette; that a congested condition of traffic existed there, and the conversion was necessary to enable it to supply consignees with fuel oil and other commodities; and that all consignees and the federal government and its soldiers abroad would have suffered if defendant had not confiscated the oil. Upon these pleadings the case was tried, and from a judgment in favor of plaintiff for the amount prayed for, defendant appealed.

[1] We have read the testimony carefully, and, in our opinion, it establishes all of the facts alleged in the petition. A fair preponderance of the evidence shows that after the conversion and before the plaintiff temporarily suspended the operations of its factory, defendant delivered to plaintiff a tank car of crude oil to replace the oil it had confiscated; but this oil was so thick and unsuitable that plaintiff could not use it, and it was therefore rejected. This is the oil which defendant alleges it delivered to plaintiff within 48 hours after receiving notice of plaintiff's immediate need of oil. A day or two after the factory had closed down and plaintiff had suffered the losses enumerated in the petition, defendant delivered to plaintiff a carload of oil of the proper consistency for use in the operation of plaintiff's factory, but this belated delivery was made at a time when plaintiff no longer had use for the oil and when it was impossible for plaintiff, by reason of that delivery, to recoup or minimize the losses it had then suffered. The preponderance of the evidence also shows that what may be termed the special circumstances, which, if established, authorize the award of special damages, were known to defendant, or, at the very least, were so apparent that they should have been foreseen by defendant. Defendant's railroad is plaintiff's only transportation facility. This railroad serves other sugar mills or factories along its main line or connecting feeders. Defendant knew the necessity for expediting the harvesting of a cane crop, the grinding of the cane, and the conversion of the juice or syrup into sugar, and the certainty of loss if any of the processes of manufacture are halted for any length of time during the grinding operations. It also knew that crude oil was the fuel used by the plaintiff to generate the power for the operation of its factory, and it converted plaintiff's car of oil almost at the close of the grinding season, at a time when it must or should have known of plaintiff's immediate need of the fuel. Under these circumstances, actual notice was not necessary. In C. J. vol. 10, p. 319, the author says:

"While it has been held or said that constructive notice does not satisfy the requirements of the rule as to notice of special circumstances the decided weight of authority is that, if it appears from the nature of the goods shipped, or from other circumstances that the carrier ought to have known of the consequences which would follow from a delay in transportation, it is charged with notice of such circumstances, although no actual notice was given. Under these circumstances the court may justly infer knowledge."

We also quote from C. J. vol. 10, p. 321, the following:

"In the leading American case on the question of special damages for unreasonable delay in shipment of machinery the rule was laid down as follows: 'If the delay is in the transportation of machinery to be applied to a special use, and that is known to the carrier, he is responsible for such damages as are fairly attributable to the delay, such as the value of the use of the machinery, to be tested by its rental price or other proximate means; the expense of idle hands, the loss of gain on work contracted to be done for another person, if such work could have been done if the machinery had been delivered, and the gain thereby definitely ascertained in proper time.' This is a remarkable and comprehensive statement of the rule, and it is fully sustained by all of the decisions in which the question has arisen."

In the case of Smith Bros. & Co. v. New Orleans & Northeastern Railroad Co., 106 La. 11, 30 So. 265, 54 L. R. A. 923, 87 Am. St. Rep. 285, this court said:

"The defendants are liable for damages which might have been foreseen. They knew that plaintiff is a merchant who would seek to sell his goods in the most favorable market. It was not proper for them to assume (although they were in good faith) that it was as well to pay the duties in Charleston, and there take the goods out of bond, thereby rendering it no longer possible to export them to New Orleans. Taking the goods out of bond was an act of interference with plaintiff's right, rendering the defendants responsible for actual damages."

After stating the general rule that notice of the special circumstances requiring prompt transportation and delivery should be given the carrier at the time of or preceding the tender of the goods for shipment before special damages are recoverable for delay, we find in C. J. vol. 10, p. 316, the following:

"On the other hand, the rule is equally well settled that special damages for delay in the shipment of goods are recoverable when the carrier had notice that a delay in delivery will result in such damages. As otherwise expressed, where at the time of entering into the contract, both parties knew and contemplated that, if a breach is committed, some injury will occur in addition to the natural and ordinary consequences of the breach, the person committing the breach will be liable to give compensation or damages on the occurrence of the injury. * * * The important consideration on which the right to recover special damages depends is not that the extent or amount of such damages was estimated by the parties, but that when the contract was made, the fact that such damages might follow the breach was contemplated by the parties."

It is contended that there is no evidence that defendant knew of plaintiff's immediate need of fuel oil. It is admitted that defendant confiscated and appropriated plaintiff's oil to its own uses, and its agent, Cade Easten, testified that Mr. Smedes was in his office constantly for two or three days trying to have two tanks of oil delivered to him, and that witness as an intermediary tried to assist him. It is shown by other testimony that one tank was finally delivered, but it was residuum, too thick to run out of the car, and plaintiff was compelled to reject it.

[2] Defendant has cited and quoted extracts from a number of cases, all of which we have read. The facts of these cases show that they are barren of proof of the carrier's knowledge of the special circumstances requiring prompt transportation or of the elements of notice. In none of these cases, however, does it appear that the carrier confiscated the consignee's property and appropriated it to its own uses when it knew that the grinding operations of sugar factories were in full blast, that crude oil was the fuel used in these factories, that there was a general shortage of crude oil in the territory served

by it, and that a serious traffic congestion then existed there.

We think the judgment appealed from is correct, and it is therefore affirmed at appellant's cost.